669 So.2d 300 (1996)
McDONOUGH EQUIPMENT CORP., Appellant/cross-appellee,
v.
SUNSET AMOCO WEST, INC., Appellee/cross-appellant.
No. 94-2705.
District Court of Appeal of Florida, Third District.
February 21, 1996.
Rehearing Denied March 27, 1996.
Hunt, Cook, Riggs, Mehr, & Miller and Joseph R. Cook, Boca Raton, for appellant.
Krongold, Bass and Todd and Anthony T. Lepore, Miami, for appellee.
Before HUBBART, LEVY, and GREEN, JJ.
GREEN, Judge.
McDonough Equipment Corp. ("McDonough") appeals an adverse final judgment, cost judgment, and denial of its motion to amend judgment. Appellee Sunset Amoco West, Inc. ("Sunset") cross appeals the cost judgment entered in its favor. Because we conclude that this action is barred by the economic loss rule, we reverse the final judgment entered in favor of Sunset and remand with directions that final judgment be entered in favor of McDonough. As a result, we do not reach the issue raised on cross appeal.
McDonough, a defendant below, is in the business of installing underground petroleum tanks. Sunset is a corporation which manages *301 a gas station for P & G Investments ("P & G"), the property's owner. Although Sunset and P & G have common ownership, they remain legally separate business entities.
Both P & G and Sunset were cited in the 1980s by Dade County Environmental Resource Management ("DERM") for various violations at the station. As a result of these citations, P & G and Sunset were required by DERM to remove existing underground tanks and piping and replace them with updated underground facilities which complied with environmental regulations. Thereafter, Sunset contracted with McDonough for the removal and replacement of the station's underground gas tanks. The terms of the contract provided, inter alia:
1) ... under no circumstances shall the seller [McDonough] ... be liable for any incidental, consequential, or special damages to include, but not limited to, loss of profit, loss of product, or any other costs associated therewith.
2) McDonough [sic] not responsible for any existing contamination of soils, groundwater, or product at site. Any clean-up to be extra.
* * * * * *
EXCAVATING... In the event any underground structures, cables, conduit, debris, rock, water, or running sand are encountered, destroyed, or damaged during the performance of the contract, the Seller [McDonough] shall not be held responsible. Additional costs resulting shall be borne by the Purchaser [Sunset] but shall in no case exceed existing rate scales for labor and materials had the quotation originally been based on time and materials....
The evidence adduced at trial below revealed that prior to the commencement of McDonough's excavation work, there was preexisting contamination at the site. Notwithstanding this fact, during the course of its removal and replacement of the underground tanks at the station, McDonough struck a gasoline line which caused additional gasoline to spill into the site of the excavation. DERM then issued additional citations and orders requiring a clean-up of the groundwater at the station. Sunset retained an environmental engineering firm, AB2MT, Inc., to clean up the groundwater at the station. Although AB2MT, Inc. billed Sunset $68,000 for the clean-up services, the checks for the payment of the bills were drawn from P & G's account.
Sunset instituted the action below against McDonough to recoup the $68,000 for the clean up of the groundwater contamination. The action was for negligent performance of the contract. The case proceeded to jury trial and the jury returned a verdict finding McDonough liable for one third of the clean-up costs or $22,666.66 and Sunset comparatively negligent for two-thirds of the costs or $45,333.34. A final judgment in the amount of $33,732.91, which represented damages plus prejudgment interest was entered against McDonough. It is from this final judgment that McDonough brings the instant appeal.
McDonough first argues that the trial court erred in denying its motions for directed verdict and/or judgment notwithstanding the verdict based upon the fact that Sunset was not the proper party to institute this action since it did not own the property or expend the funds for the clean-up. We conclude that this argument is unavailing to McDonough since it failed to challenge Sunset's capacity to sue in its answer and affirmative defenses to the amended complaint. Pursuant to Rule 1.120(a), Florida Rules of Civil Procedure:
When a party desires to raise an issue as to the legal existence of any party, the capacity of any party to sue or be sued, or the authority of a party to sue or be sued in a representative capacity, that party shall do so by specific negative averment which shall include such supporting particulars as are peculiarly within the pleader's knowledge.
Since McDonough failed to raise Sunset's capacity to sue in its answer, it waived this issue. Wittington Condo. Apartments, Inc. v. Braemar Corp., 313 So.2d 463 (Fla. 4th DCA 1975), cert. denied, 327 So.2d 31 (Fla.1976); Cor-Gal Builders, Inc. v. Southard, 136 So.2d 244 (Fla. 3d DCA 1962); *302 Shelbourne Enters., Inc. v. Last, 129 So.2d 430 (Fla. 3d DCA 1961).
McDonough next asserts that it is entitled to judgment as a matter of law because this action is otherwise barred by the economic loss doctrine. With this we agree.
The economic loss rule, simply stated, precludes a recovery in tort for purely economic losses which are unaccompanied by personal injury or damage to independent property. Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993); Florida Power & Light Co. v. Westinghouse Elec. Corp, 510 So.2d 899 (Fla.1987); Palau Intern. Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA), rev. denied, 661 So.2d 825 (Fla.1995); Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992), rev. denied, 626 So.2d 207 (Fla.1993). This rule is based upon the prevailing view that contract principles rather than tort principles are more appropriate to resolve purely economic claims and encourage parties to negotiate economic risks through warranty provisions and price. Florida Power & Light, 510 So.2d at 900-01. Economic losses or claims have been defined by our supreme court as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profitswithout any claim of personal injury or damage to other property." Casa Clara, 620 So.2d at 1246 (quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966)).
Although the economic loss rule emerged in products liability cases, its applicability has been extended to contracts for services. AFM Corp. v. Southern Bell Tel. and Tel. Co., 515 So.2d 180 (Fla.1987). In AFM, the economic loss rule was invoked to preclude a purchaser of advertising services from recovering economic losses (i.e. lost profits) as a result of the negligent performance of the contract. There, the court pointed out that the contract for advertising services "defined the limitation of liability through bargaining, risk acceptance and compensation" and concluded that in the absence of "conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses." Id. at 181-82.
Based upon the reasoning of AFM, we must likewise conclude in the instant case that Sunset may not recover in tort purely economic losses in the form of contractually delegated clean-up costs in the absence of evidence of personal injury or independent property damage. To hold otherwise, we think, would stand the economic loss rule and its underlying premise on their head. In their negotiated contract for services, Sunset and McDonough expressly defined the limitation of liability and respective risks for each party, including the risk of underground water contamination. Having done so, Sunset may not now circumvent its contractual limitations and risks by seeking to recoup such losses in a tort action.
We therefore reverse the judgment and remand with instructions that final judgment be entered in favor of McDonough. In light of our decision, we do not reach the cross appeal.