697 So.2d 524 (1997)
Nader W. SARKIS and Nazih W. Sarkis, Appellants,
v.
PAFFORD OIL COMPANY, INC., a Florida Corporation, James Pafford, Lesley Pafford, and Amoco Oil Company, a Maryland Corporation, and Richard Langston, Appellees,
No. 96-973.
District Court of Appeal of Florida, First District.
April 23, 1997.
*525 Gene D. Brown, Tallahassee, for Appellants.
William R. Mabile, III, and Marjorie M. Cain of Fuller, Johnson & Farrell, P.A., Tallahassee, for Appellees.
PADOVANO, Judge.
The plaintiffs, Nader and Nazih Sarkis, appeal a final order dismissing their second amended complaint against the defendants, Richard Langston and Amoco Oil Company, with prejudice. Among the claims remaining at issue in the appeal, we conclude that the trial judge correctly dismissed five but incorrectly dismissed two others. Therefore, we affirm in part and reverse in part and remand for further proceedings in the trial court.
*526 On September 1, 1993, the plaintiffs signed an agreement with Pafford Oil Company to lease a service station and convenience store known as the Capital Hills Amoco Station. As a part of the lease, the plaintiffs also agreed to purchase 60,000 gallons of gasoline per month from Pafford Oil, a local distributor of Amoco products. The plaintiffs alleged that during the term of the lease Pafford Oil delivered inferior grades of gasoline produced by companies other than Amoco and sold it to them for the price of higher grades of Amoco gasoline.
When the plaintiffs discovered that they were purchasing inferior gasoline at the price of higher quality Amoco gasoline, they notified Richard Langston, the Amoco representative for North Florida. According to the complaint, Langston investigated the plaintiffs' claim but then covered up their allegation by conducting false tests showing that the plaintiffs had actually received the Amoco gasoline for which they were paying. This practice of delivering falsely marketed gasoline was said to have continued throughout the course of the lease between the plaintiffs and Pafford Oil Company.
The second amended complaint alleges that Richard Langston and Amoco Oil Company conspired to commit a fraud on the plaintiffs (Counts XVII and XVIII, respectively), and it includes four other claims against Amoco Oil, a violation of the Florida Motor Fuel Marketing Practices Act, sections 526.301-526.3135, Florida Statutes, (Count XIX), conspiracy to interfere with plaintiffs' business relationship with their customers (Count XX), a violation of the Florida Unfair and Deceptive Trade Practices Act, sections 501.201-501.213, Florida Statutes,(Count XXI), an action for civil theft pursuant to section 812.035, Florida Statutes, (Count XXII), and a violation of the Florida Racketeer Influenced and Corrupt Organization Act, sections 895.01-895.06, Florida Statutes, (Count XXIII). The plaintiffs also asserted a variety of claims against Pafford Oil and its representatives, but these claims were settled.
Langston and Amoco filed a motion to dismiss contending that the action for interference with a business relationship could not be based on an alleged interference with unidentified customers, that the Motor Fuel Marketing Practices Act did not apply in the absence of a contract between the parties, and that the remaining claims were barred by the economic loss rule. The trial court granted the motion and dismissed the second amended complaint with prejudice. This appeal followed.
We begin our analysis with a statement of the applicable standards in the trial court and in this court. When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the allegations of a complaint as true. Snow v. Byron, 580 So.2d 238 (Fla. 1st DCA 1991); Shahid v. Campbell, 552 So.2d 321 (Fla. 1st DCA 1989). Likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint. Higgs v. Florida Department of Corrections, 647 So.2d 962 (Fla. 1st DCA 1995); McKinney-Green Inc. v. Davis, 606 So.2d 393 (Fla. 1st DCA 1992). Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review.
Applying these standards, we conclude that the trial court correctly dismissed the claim that Amoco interfered with a business relationship between the plaintiffs and their customers (Count XX). The amended complaint does not identify the customers who were the subject of the alleged interference. As the supreme court said in Ethan Allen Inc., v. Georgetown Manor Inc., 647 So.2d 812 (Fla.1994), an action for tortious interference with a business relationship generally requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id. at 815. The court added in Ferguson Transportation Inc. v. North American Van Lines, 687 So.2d 821 (Fla.1996), that a claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with "identifiable customers." *527 Id. The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large, yet that is precisely the basis of the claim asserted in this case. The plaintiffs alleged that the conduct in question resulted in a general loss of business, but even if that could be proven, it would not amount to a tortious interference with a business relationship as defined in Ethan Allen and Ferguson. Because the interference alleged here is not specific, this claim must fail.
Four other claims were properly dismissed as a matter of law on the ground that they were barred by the economic loss rule. These are the fraud claim against Langston (Count XVIII), and the claims of fraud, civil theft, and civil racketeering, (Count XVII, Count XXII, and Count XXIII, respectively) against Amoco. In the absence of personal injury or property damage, a party is generally not entitled to initiate an action in tort to recover an economic loss. Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993); Florida Power & Light Co. v. Westinghouse Electric Corporation, 510 So.2d 899 (Fla.1987). This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies. Strickland-Collins Construction v. Barnett Bank of Naples, 545 So.2d 476 (Fla. 2d DCA 1989).
The fraud claims against Amoco and Langston are based on a general allegation that these defendants conspired to deliver inferior grades of fuel and to conceal this fact from the plaintiffs. The plaintiffs contend that these claims are not barred by the economic loss rule because the plaintiffs had only a "garden variety" lease which did not provide an adequate contract remedy. This argument must fail, however. The agreement between the plaintiffs and Pafford Oil not only required the plaintiffs to lease the premises, it also required the plaintiffs to purchase 60,000 gallons of motor vehicle fuel per month. If the plaintiffs incurred a risk of obtaining inferior fuel, that was a risk they could have addressed when they negotiated the contract. Florida Power & Light Co. v. Westinghouse.
Fraud in the inducement to make a contract is not barred by the economic loss rule. As the supreme court explained in HTP, Ltd., v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996), fraud in the inducement is an independent tort that requires proof of facts that are distinct from the allegations of a breach of contract. In the present case, however, the plaintiffs' claim of fraud is based entirely on an allegation that the defendants conspired to deliver less than what the plaintiffs had purchased under the agreement. This form of post-contract fraud is still barred by the economic loss rule. Lewis v. Guthartz, 428 So.2d 222 (Fla.1982); Richard Swaebe, Inc., v. Sears World Trade, Inc., 639 So.2d 1120 (Fla. 3d DCA 1994).
The application of the economic loss rule to statutory causes of action is not confined to a determination whether the action duplicates potential contract remedies. In such cases, the courts must also consider the possibility that a bar to the action would amount to a judicial interference with authority vested in the legislature. Florida courts have held that the economic loss rule can be applied to statutory actions, but this line of cases appears to be limited to actions that could be characterized as statutory torts. For example, the economic loss rule has been applied as a bar to a statutory action for civil theft. See Gambolati v. Sarkisian, 622 So.2d 47 (Fla. 4th DCA 1993); Gilman Yacht Sales v. First National Bank of Chicago, 600 So.2d 1131 (Fla. 4th DCA 1992). Compare Burke v. Napieracz, 674 So.2d 756 (Fla. 1st DCA 1996) (the rule did not bar a civil theft claim because the underlying act did not arise out of a failure to perform the contract but arose from an affirmative act of theft independent from the contract). Likewise, the economic loss rule has been applied as a bar to a civil racketeering claim. Ginsberg v. Lennar Florida Holdings, Inc., 645 So.2d 490 (Fla. 3d DCA 1994); Futch v. Head, 511 So.2d 314 (Fla. 1st DCA 1987).
*528 Based on these authorities, we conclude that the trial court correctly dismissed the plaintiffs' claims of civil theft and civil racketeering. Civil theft is a statutory form of conversion and civil racketeering is an action that can be pursued if the defendant has engaged in a pattern of criminal activity such as theft. The delivery of inferior fuel may be a form of conversion of the funds paid under the agreement and over time it may even be a pattern of conversion. However, these economic losses are no different from those that could be asserted in a contract action based on the failure to deliver the proper grade of fuel.
By the same principles of law, we conclude that the trial court erred in dismissing the plaintiffs' claim under the Florida Unfair and Deceptive Trade Practices Act. In reaching this conclusion we rely, as well, on Judge Lazzara's comprehensive analysis of the issue in Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602 (Fla. 2d DCA 1997). There the court squarely held that the economic loss rule is not a bar to a statutory action under the Florida Deceptive and Unfair Trade Practices Act. Even if such an action could be characterized as a statutory tort, it would not be barred by the economic loss rule because it is plainly independent of the contract. The purpose of this statute is not merely to provide a remedy for an individual but to protect consumers at large from unfair trade practices. § 501.202, Fla.Stat. (1995). Delgado. A party who asserts a claim under the statute must prove the existence of an unfair or deceptive act or practice. The elements of this statutory action are independent of the elements of a simple breach of contract and the remedies available for a "willful" violation of the statute, as alleged in the amended complaint, are not the same as those available in a contract action. § 501.2075, Fla.Stat. (1995).
Finally, we address the plaintiffs' claim that Amoco violated section 526.306 of the Florida Motor Fuel Marketing Practices Act. (Count XIX). Amoco argued in the trial court that this claim should be dismissed because a right of action exists under the statute only on behalf of a party who is purchasing fuel under a contract with the defendant. Section 526.306 prohibits a supplier of motor vehicle fuel from engaging in discriminatory fuel allocations to "a reseller purchasing under contract from such supplier." Evidently, the trial court accepted Amoco's contention that the plaintiffs could not assert a cause of action under the statute because the contract was between Amoco (the supplier) and Pafford Oil (the reseller). The plaintiffs were buying the fuel allocated to Pafford but they had no contract with Amoco.
We conclude that the trial court erred in dismissing the plaintiffs' claim under the Motor Fuel Marketing Practices Act. Section 526.306 merely defines the unlawful practice; it does not limit the class plaintiffs who can seek redress for injuries caused by the unlawful practice. A review of the civil remedy provisions of the statute plainly reveals that relief is available to a broad class of parties injured by a discriminatory practice in the marketing of motor fuel. Section 526.312 states that "[a]ny person injured as a result of an act or practice which violates this act may bring a civil action for appropriate relief, including an action for a declaratory judgment, injunctive relief, and actual damages." If the plaintiffs can show that they were injured by a discriminatory fuel allocation under a contract between Amoco and Pafford, as alleged in the amended complaint, they are entitled to relief under the statute.
In summary we find no error in the dismissal of the claim of fraud against Langston, or in the claims of fraud, civil theft, civil racketeering, and business interference against Amoco. We conclude, however, that the trial court erred as a matter of law in dismissing the claim that Amoco violated the Unfair and Deceptive Trade Practices Act and in dismissing the claim that Amoco violated the Motor Fuel Marketing Practices Act. The case is remanded for further proceedings on those two counts of the amended complaint.
Reversed in part and affirmed in part.
BOOTH, and WOLF, JJ., concur.