711 So.2d 1255 (1998)
COMPTECH INTERNATIONAL, INC., a Florida corporation, Appellant,
v.
MILAM COMMERCE PARK, LTD., a Florida limited partnership and D & M Modeling, Inc., a dissolved Florida corporation. Appellees.
No. 96-1056.
District Court of Appeal of Florida, Third District.
May 20, 1998.
*1256 Jeffrey J. Pardo, Miami Beach, for appellant Comptech International, Inc.
Womack, Appleby & Brennan, and David C. Appleby, Miami, for appellee Milam Commerce Park, Ltd.
Before COPE, GERSTEN and SHEVIN, JJ.

ON MOTION FOR REHEARING
GERSTEN, Judge.
We withdraw our previously issued opinion and substitute the following in its place.
Appellant, Comptech International, Inc. ("Comptech"), appeals a final summary judgment in favor of its landlord, appellee Milam Commerce Park, Ltd. ("Milam"). We affirm finding the "other property" exception to the economic loss rule ("ELR") does not apply because potential damage to Comptech's computers should have been contemplated by the parties' commercial lease contract. Once again, we reiterate this Court's strong embrace of the economic loss rule and express desire to uphold the doctrine's underlying policies.
Comptech, a computer hardware distributor, leased commercial space from Milam since 1987. In 1990, the two parties agreed to enter into a second lease. The new lease stipulated that Comptech would lease an additional *1257 13,000 square feet of warehouse space, and, that Milam would build 2,000 square feet of office space in the area that Comptech was already leasing. The lease contained an indemnity provision whereby Comptech agreed to indemnify Milam from all claims for damages arising under the use and occupancy of the premises, including any improvements.
During the construction of the additional office space, Comptech complained that the improvements were not being constructed in a timely and workman-like fashion resulting in damage to its office space and computers. Comptech brought suit against Milam asserting negligence in selection of contractors, negligent construction, damages resulting from violation of the South Florida Building Code, punitive damages, and return of rent illegally collected. All of the counts in Comptech's third amended complaint except "negligence in selection of contractors" were dismissed with prejudice.
Thereafter, the trial court granted Milam's motion for summary judgment on the sole remaining negligence count finding that:
Any duty imposed upon [Milam] to hire a competent contractor to fulfill the terms of the lease agreement at issue wherein additional office space was to be built, was a duty which stemmed from the lease agreement. Any breach of that duty giving rise to a negligence claim is foreclosed by the Economic Loss Doctrine. A breach of contract alone cannot support a cause of action in tort. Casa Clara v. Charlie [Charley] Toppino & Sons, 620 So.2d 1244 (Fla. 1993).
We agree. Although we reject as meritless the several arguments raised by Comptech on appeal, our reasoning for affirmance requires further discussion to clarify application of the ELR's "other property" exception in a commercial context, as well as its effect upon claims brought under the South Florida Building Code.

I.
First, we reject Comptech's argument that Milam's alleged breach of the building code, Section 553.85, Florida Statutes (1989), constitutes an "exception" to the ELR.[1] Our Supreme Court has recognized only two narrow exceptions to the application of the doctrine, see Casa Clara, 620 So.2d at 1244, and there is no justification under these circumstances to carve out a third.
Simply, the ELR does not permit a cause of action for economic damages brought under the South Florida Building Code where the claims are clearly contractual in nature and the cause of action is inseparably connected to the breaching party's performance under the agreement. See Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74 (Fla. 3d DCA), review denied 700 So.2d 685 (Fla.1997); Ginsberg v. Lennar Florida Holdings, Inc., 645 So.2d 490 (Fla. 3d DCA 1994)(and cases cited therein), review denied, 659 So.2d 272 (Fla.1995); accord Hoseline, Inc. v. U.S.A. Diversified Products, Inc., 40 F.3d 1198 (11th Cir.1994). Where the parties to an agreement negotiate within a contractual setting the same duties as occasioned by the statute, a breach of which would lead to the same economic losses involving identical elements to the claim, the economic loss doctrine prevails.
As recently recognized in Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524 (Fla. 1st DCA 1997): "Florida courts have held that the economic loss rule can be applied to statutory actions, but this line of cases appears to be limited to actions that could be characterized as statutory torts." Section 553.84 is a statutory tort. Thus the ELR applies if the cause of action founded on the statutory tort is dependent upon the contract.[2]
*1258 Here, Milam's alleged breach of duty to Comptech stemmed from the lease. But for the lease agreement, there would have been no damages. The statutory tort claim is dependent upon the contractual obligation at issue. Thus the statutory tort claim is subsumed by the ELR because the economic losses sought are no different from those that could have been asserted in a contract action for breach of the lease agreement. See Sarkis v. Pafford Oil Co., Inc., 697 So.2d at 524.
The dissent argues to the contrary quoting the language in Section 553.84 which provides a cause of action against the party committing a violation "notwithstanding any other remedies." According to the dissent, this language constitutes a statutory mandate eliminating application of the ELR to the statutory cause of action. We decline to adopt such a literal interpretation which in our view would thwart the manifest purpose of the economic loss doctrine. "Notwithstanding any other remedies available" does not necessarily imply "notwithstanding the Economic Loss Rule," when "but for" the contract, there would be no damages.
We emphasize that the ELR does not exclude separate and independent building code violation claims, or claims arising from noncontractual settings.[3] At the risk of being repetitive, we clarify that our holding is limited to actions for economic damages inseparably connected to the breaching party's performance under the agreement. Where the essence of an asserted building code violation concerns the heart of the parties' agreement, attempting to mask a contract claim in the guise of a building code violation will not suffice to subvert the spirit of the economic loss doctrine. See Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d at 74.[4] Thus we find the ELR does *1259 apply to prohibit Comptech from pursuing a dependent statutory tort action in an attempt to expand its remedies for breach of contract beyond that which was agreed to.[5]

II.
Second, we also reject Comptech's argument that its damaged property falls within the "other property" exception to the ELR. Specifically, Comptech's complaint alleged its office suffered property damage by:
i. tearing down walls there;
ii. Ruining the flooring there;
iii. destroying the existing bathrooms;
iv. interrupting and overloading the electrical system thereby causing both lost data and physical damage to computers;
v. preventing use of warehouse space and causing Comptech to continuously move its inventory from location to location.
v. failing to prevent excessive dust and dirt from being absorbed by the air conditioning system thereby damaging computers and data therein.
vii. failing to clean up debris.
Basically, the complaint alleged Comptech suffered property damage to its electrical systems, warehouse space and computers, claiming damages in excess of $2,000,000.00 plus interest and costs. Comptech further sought punitive damages against Milam in the sum of $5,000,000.00.
Under Florida law, the ELR prohibits a plaintiff who has a contract claim from recovering tort damages for purely economic losses in the absence of personal injury or damage to "other property." Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993); AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987); Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla.1987). The policy behind the rule is to encourage contracting parties to protect their economic interests through negotiation and insurance, recognizing that in a free market, disappointed economic expectations are often the unintended result of an imperfect bargain.
In accordance with the ELR's underlying policy, this court on numerous occasions has reiterated its position that disappointed economic expectations are best protected by the law of contract and not tort. McDonough Equipment Corp. v. Sunset Amoco West, Inc., 669 So.2d 300 (Fla. 3d DCA 1996); Standard Fish Company, Ltd., v. 7337 Douglas Enterprises, Inc., 673 So.2d 503 (Fla. 3d DCA 1996); Florida Bldg. Inspection Services, Inc. v. Arnold Corp., 660 So.2d 730 (Fla. 3d DCA 1995); Palau International Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA), rev. denied, 661 So.2d 825 (Fla.1995); Bay Garden Manor Condominium Assoc., Inc. v. James D. Marks Associates Inc., 576 So.2d 744, 745 (Fla. 3d DCA 1991). As explained by the supreme court in Casa Clara Condominium *1260 Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d at 1246 (citations omitted):
[E]conomic losses are disappointed economic expectations, which are protected by contract law, rather than tort law. This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party.
A commercial party always has the ability to protect its interests through negotiation and contractual bargaining or insurance. The ability of the parties to independently protect themselves from the risk of economic loss through the negotiation process has been a recurring theme in several of this court's recent decisions.
For example, in Palau International Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d at 412, we held that an aircraft purchaser was not allowed recourse in tort where he could have obtained options through better negotiations to protect himself from a defect in the aircraft's landing gear. Likewise, in Standard Fish Company, Ltd., v. 7337 Douglas Enterprises, Inc., 673 So.2d at 503, this court noted that the damage alleged was not outside the scope of the negotiations providing for cold fish storage and that the risks of damage complained of could have been allocated through contract negotiations. Similarly, in Florida Bldg. Inspection Services, Inc. v. Arnold Corp., 660 So.2d at 730, we found that a sublessee of warehouse space who suffered water damage from a leaky roof had the ability to allocate risk through a better negotiated contract. More recently, as observed in McDonough Equipment Corp. v. Sunset Amoco West, Inc., 669 So.2d at 300, we explained that a negotiated contract for services which defines limitations of liability and respective risks cannot be circumvented by seeking to recover purely economic losses through a tort action.
Turning to the present case, Comptech seeks to avoid the application of the ELR by arguing that its damaged property constitutes "other property" which fell outside the parameters of the lease agreement and the ELR. No Florida court has defined what constitutes "other property" under the ELR in the context of a commercial lease. In Casa Clara, the Florida Supreme Court discussed the exception under the circumstances of plaintiffs who purchased finished products in which the allegedly defective product was a component. Although factually distinguishable, we find the reasoning in this landmark case to be highly instructive.
The plaintiffs in Casa Clara were homeowners who alleged that contaminated concrete ruined steel reinforcing rebar, which in turn ruined their homes. Attempting to avoid application of the ELR, the homeowners argued that their homes constituted "other property" which was damaged by the component concrete. The Florida Supreme Court disagreed, reasoning that:
the character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant.... [The homeowners] bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.
Casa Clara, 620 So.2d at 1247.
In holding that damage to a component part of a product does not trigger the "other" property exception to the ELR, the Court focused on the object of the parties' bargain. The homes themselves were in fact the benefit that the parties had bargained for.
Subsequent products liability cases have also focused on the object of the bargain in relation to the damaged property in analyzing the applicability of the "other property" exception. See Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. 4th DCA), rev. granted, 678 So.2d 339 (Fla.), and decision approved by, 684 So.2d 732 (Fla.1996); Fishman v. Boldt, 666 So.2d 273 (Fla. 4th DCA), rev. granted, 680 So.2d 422 (Fla.1996); E.I. Du Pont de Nemours & Co. v. Finks Farms, Inc., 656 So.2d 171 (Fla. 2d DCA 1995). In Jarmco, the Fourth district held that a boat builder's non-fraud claims against a resin seller for damages to its boat resulting from allegedly defective resin were barred by the ELR. In rejecting the boat builder's claim that the boat constituted "other property", the Fourth District noted the Florida Supreme *1261 Court's intent in Casa Clara that the ELR have broad application, and that "the `other' property exception to the ELR must be limited to property that is unrelated and unconnected to the product sold...." Jarmco, Inc. v. Polygard, Inc., 668 So.2d at 303.
In accordance with the Supreme Court of Florida's consistent endorsement of the ELR, we find no basis for applying the exception to Comptech because the "other property" damage was, or should have been, contemplated by the contract. Comptech depended upon its computers to configure new computer products which were then purchased by its customers. Obviously the computers constituted an essential part of the business endeavor. Likewise, the purpose for entering the lease and the build-out agreement was to benefit the business endeavor. Thus, the computers were directly related and connected to furthering Comptech's business, which was also the object of the lease and build-out agreement.
Moreover, the possibility of collateral damage to the equipment during the construction was an eventuality that could have been reasonably contemplated by the parties. In fact, the parties did negotiate the allocation of risks and remedies as evidenced by the indemnification provision of the contract. In the indemnification provision, Comptech agreed to hold Milam harmless for "all claims of every kind" including "damaged merchandise, equipment, fixture or other property, or damage to business or for business interruption, arising, directly or indirectly out of, from or on account of such occupancy and use, or resulting from present or future condition or state of repair thereof."[6] The language in the indemnification clause further supports our conclusion that the alleged damages do not constitute a tort separate and apart from the breach of contract.
Essentially, Comptech could have contended with the potential risks to its *1262 business computers by negotiating to supply its own contractors, negotiating a more favorable indemnification provision, or calling for more protective measures to equipment it must have known were at risk in the construction environment.[7] Comptech's computers were fundamentally related to the commercial endeavor contemplated by the bargained for lease agreement and thus do not constitute "other property" for ELR purposes. See Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734 (11th Cir.1995).[8]
Thus we conclude that foreseeable damage to business property which constituted part of a bargained-for commercial leasehold agreement, does not constitute an exception to the economic loss doctrine. See East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d at 734; American Eagle Ins. Co. v. United Technologies Corp., 48 F.3d 142 (5th Cir. 1995); King v. Hilton-Davis, 855 F.2d 1047 (3rd Cir.1988); Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir.1987).[9] A finding to the contrary, if taken to its logical extreme, would eviscerate the ELR in a commercial lease context, and would be antithetical to the foundation of commerce in *1263 this countrythe freedom to contract.[10]

III.
In conclusion, the possibility of construction damage to Comptech's computers was a proper subject of risk allocation pursuant to the lease negotiations. Comptech's failure to contend with those risks during the negotiation process is a programming glitch that cannot be remedied by inserting a disk into "tort drive." Accordingly, we affirm the judgment below.
Affirmed.
SHEVIN, J., concurs.
COPE, Judge (dissenting).
In view of the majority's substitution of an opinion on motion for rehearing, I withdraw my previously issued dissent and substitute the following revised dissent.
Under the economic loss doctrine, a contract party is confined to contract remedies for economic loss, and cannot sue in tort unless there has been personal injury or property damage. See Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1246 (Fla.1993); Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 900 (Fla.1987); majority opinion at 1257. In this case, tenant Comptech International, Inc., leased business premises from landlord Milam Commerce Park, Ltd., and the lease agreement called for the landlord to build out part of the leased space while the tenant occupied the remainder. The landlord performed the renovations negligently, causing damage to the tenant's computers, among other things.[11]

I.
The first question is whether the damage to the tenant's computers constitutes property damage within the meaning of the economic loss doctrine so as to allow the tenant to sue the landlord in tort. The majority says, and I agree, that "[n]o Florida court has defined what constitutes `other property' under the [economic loss rule] in the context of a commercial lease." Majority opinion at 1260.
In my view, a landlord-caused injury to a tenant's property within the leased premises qualifies as property damage for purposes of the economic loss doctrine, and the tenant may sue in tort.

A.
The tenant leased a warehouse and office facility from the landlord and after three years needed additional space to expand. The parties entered into a second lease for an additional 13,000 square feet of warehouse space. In the second lease, the landlord agreed to build a 2000-square-foot addition to the tenant's already-occupied office.
To handle this construction, the landlord hired an unlicensed contractor. The landlord did not prepare any architectural plans or obtain any building permits. The tenant says that during the renovation, the construction company released excessive dust and dirt throughout the office space, causing physical damage to the tenant's computers, and overloaded the electrical system, causing loss of data and further physical damage. The tenant also contends that the construction company damaged the existing bathrooms and flooring in the tenant's original space.
The tenant brought suit against the landlord for property damage occasioned by the negligently performed renovation. The trial court entered summary judgment for the *1264 landlord, reasoning that the landlord's construction obligations arose out of a contract and that recovery was barred under the economic loss rule.

B.
The tenant alleges that its on-premises computers suffered property damage by reason of the landlord's negligence. This is sufficient to state a claim in tort, and is not barred by the economic loss rule.
In Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993), the Florida Supreme Court considered the economic loss rule in the context of a claim that a condominium building had been constructed with defective concrete. The concrete was a component part of the finished product, the condominium building. The court ruled that the economic loss rule barred the homeowners' tort suit against the concrete supplier under a negligence theory. See id. at 1245. In reaching that conclusion, the court pointed out that "[t]he homeowners are seeking purely economic damagesno one has sustained any physical injuries and no property, other than the structures built with Toppino's concrete, has sustained any damage." Id. at 1246 (emphasis added; footnote omitted). The implication is that if the defective concrete had fallen within a condominium unit, injuring either the homeowner or the homeowner's property, then the homeowner would be allowed to bring a tort suit for personal injury or property damage.
Similarly, in Florida Power & Light Co. v. Westinghouse Electric Corp., the Florida Supreme Court found "contract principles more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." 510 So.2d at 902 (emphasis added). Here there is "accompanying ... property damage." Id. The tenant is allowed to proceed in tort.
Logic dictates that property damage claims be analyzed by the same rule that applies to personal injury claims. If, for example, the landlord negligently caused the ceiling to fall on the tenants and injure them, clearly the tenants could sue the landlord in tort for personal injury. The landlord concedes this. By a parity of reasoning, if the landlord negligently performs renovations, thereby ruining the tenant's on-premises computers, the tenant may seek a tort recovery for property damage.
Supporting the proposition that the tenant can proceed in tort is a recent decision of the United States Supreme Court, Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). There, a manufacturer built a fishing boat and sold it to the buyer. The buyer added extra equipment (a skiff, fishing net, and spare parts) and resold the boat and contents to a subsequent purchaser. Owing to a defect in the boat, the boat caught fire and sank.
The question before the Court was whether, under the economic loss doctrine, the contents of the boat (the extra equipment) should be considered part of the boat"the `product itself,' in which case the plaintiff cannot recover in tort for its physical loss? Or is it `other property,' in which case the plaintiff can recover?" Id. at 1785.
The Court ruled that the extra equipment was "other property" for purposes of the economic loss doctrine, and held that the plaintiff could proceed in tort. Id. "Items added to the product by the Initial User are... `other property'...." Id. at 1786. The Court explicitly rested its ruling on East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), which is the foundation of Florida's economic loss doctrine. See, e.g., Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628, 631 (Fla.1995); AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180, 181 (Fla.1987).
The Court went on to say:
State law often distinguishes between items added to or used in conjunction with a defective item purchased from a Manufacturer (or its distributors) and (following East River) permits recovery for the former when physically harmed by a dangerously defective product. Thus the owner of a chicken farm, for example, recovered for chickens killed when the chicken house ventilation system failed, suffocating the 140,000 chickens inside. A.J. Decoster Co. *1265 v. Westinghouse Electric Corp., 333 Md. 245, 634 A.2d 1330 (1994). A warehouse owner recovered for damage to a building caused by a defective roof. United Air Lines, Inc. v. CEI Industries of III., Inc., 148 Ill.App.3d 332, 102 Ill.Dec. 1, 499 N.E.2d 558 (1986). And a prior case in admiralty (not unlike the one before us) held that a ship charterer, who adds expensive seismic equipment to the ship, may recover for its loss in a fire caused by a defective engine. Nicor Supply Ships Assocs. v. General Motors Corp., 876 F.2d 501 (C.A.5 1989).
520 U.S. at ___, 117 S.Ct. at 1787.
That case was recently relied upon by the United States Court of Appeals for the Third Circuit in holding that the contents of a pre-fabricated warehouse constitute "other property" within the meaning of the economic loss doctrine. 2-J Corp. v. Tice, 126 F.3d 539, 544 (3d Cir.1997). In the present case, we deal with a lease of premises rather than occupation of a warehouse or an ocean fishing vessel, but the analogy holds. Equipment brought on board the vessel and inventory stored in the warehouse are "other property." Id. Computers brought into the office space are "other property" as well.

C.
The majority opinion correctly points out that there is an indemnity provision in the lease under which the tenant agreed to hold the landlord harmless for, among other things, damage to merchandise, equipment, or other property arising out of the tenant's occupancy. See majority opinion at 1261. The idea was to protect the landlord from liability for anything that the tenant did while occupying the premises.
Usually, such a contractual allocation of risk would be dispositivebut not in this case. Something is missing: the indemnity clause does not state that it exculpates the landlord for the landlord's own negligence. Contracts purporting "to indemnify a party against its own wrongful acts are viewed with disfavor in Florida. Such contracts will be enforced only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms." Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979) (citations omitted; emphasis added). If the indemnity contract is to protect the indemnitee from liability caused by its own negligence, the contract must explicitly say just that. See id.; University Plaza Shopping Ctr., Inc. v. Stewart, 272 So.2d 507, 509-12 (Fla.1973). A general provision indemnifying the indemnitee against any and all liability is not enough. See University Plaza Shopping Ctr., Inc. v. Stewart, 272 So.2d at 510-11.
The landlord says that the tenant could have put something in the contract to allocate responsibility for loss during the buildout. That argument is both makeweight and wrong. It is makeweight because in hindsight it can always be said that the parties could have negotiated a more specific contract. It is wrong because if the landlord wanted to be exculpated for its own negligence, then it was the landlord's job, not the tenant's, to put a proper exculpatory clause in the contractwhich the landlord did not do. As the United States Supreme Court said in Saratoga Fishing, "No court has thought that the mere possibility of such a contract term precluded tort recovery for damage to an Initial User's other property." 117 S.Ct. at 1788.
More to the point, the legal test under the economic loss doctrine is whether the plaintiff is making a claim for personal injury or property damage. If the claim is for personal injury or property damage, then the plaintiff is allowed to proceed in tort. It does not matter that the parties could have written a different contract.
Here, the landlord was supposed to use due care in the buildout and botched the job, causing damage to tenant's property. There is a claim in tort.[12]

*1266 II.
The second question is whether the economic loss doctrine abolishes the statutory cause of action for violation of the building code.

A.
As already stated, the landlord did the building addition without pulling the required permits. The Legislature has enacted section 553.84, Florida Statutes (1989), which states:
553.84 Statutory civil action.-- Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this part or the State Minimum Building Codes, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation.
(Emphasis added). The statute provides a cause of action where defendant has injured plaintiff by violating the building code or doing construction without the required building permit. See Id. §§ 553.84,.79.[13]
The majority opinion says that the tenant has no claim under this statute because there was a contract. See majority opinion at 1258-1259. The majority opinion goes on to state that "we are not confronted with a statutory manifestation of a legislative policy decision to expand remedies for recovering economic losses." Id. at 1259 n. 4. (citation omitted).
With all due respect, that analysis is backwards. The statute says the exact opposite of what the majority opinion claims. The statute begins: "Notwithstanding any other remedies available, any ... party ... damaged as a result of a violation ... has a cause of action ... against the ... party who committed the violation." § 553.84, Fla. Stat.
"Notwithstanding any other remedies" means "notwithstanding any other remedies"including a contract remedy. The Legislature has plainly said that a litigant can sue under section 553.84 in addition to any other remedies the litigant may have. The fact that tenant also has a contract claim is irrelevant.

B.
In a recent case, this court has rejected the idea that the economic loss doctrine swallows up statutory causes of action. In Rubio v. State Farm Fire & Cas. Co., 662 So.2d 956 (Fla. 3d DCA 1995), the insured sued their own insurance company for breaching the insurance contract by failing to pay their insurance claim. The trial court ruled that the economic loss doctrine eliminated the insured's statutory cause of action for bad faith established by section 624.155, Florida Statutes (1993), because the bad faith claim arose out of the same breach of contract. See 662 So.2d at 957. Reversing, this court said:
By dismissing ... with prejudice based on the economic loss rule, which bars claims for tort damages in a contractual setting where there are only economic losses, the trial court abrogated the rights granted to insureds by section 624.155 and the common law. Courts cannot willy nilly strike down legislative enactments.

662 So.2d at 957 n. 2 (emphasis added; citations omitted).
The Second District Court of Appeal followed Rubio and overturned a trial court ruling that the economic loss doctrine barred a cause of action based on the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201-.213, Fla. Stat. (1993) ("FDUTPA"). See Delgado v. J.W. Courtesy Pontiac *1267 GMC-Truck, Inc., 693 So.2d 602, 611 (Fla. 2d DCA 1997). There, as here, the statute created an express statutory cause of action. See id. at 606. There, as here, the statute said that the statutory remedies were in addition to other remedies. See id. at 606. Rejecting the idea that the economic loss doctrine eliminated the statutory cause of action, the Second District said:

[C]ourts do not have the right to limit and, in essence, to abrogate, as the trial court did in this case, the expanded remedies granted to consumers under this legislatively created scheme by allowing the judicially favored economic loss rule to override a legislative policy pronouncement and to eliminate the enforcement of those remedies. In sum, any tension between the legislative policy embodied in the FDUTPA and the judicial policy embodied in the economic loss rule must be resolved under the doctrine of the separation of powers in favor of the legislative will so long as the FDUTPA passes constitutional scrutiny.
Id. at 609 (emphasis added; citations and footnote omitted).
The practical effect of the majority's ruling is to eliminate the statutory cause of action. The majority says that a statutory claim can be brought so long as the claim does not arise under a contract. See majority opinion at 1258-1259. That is a meaningless assurance. In virtually every case, the homeowner who builds a house or rebuilds after a hurricane or adds a room addition does so under a written contract. The same is true for a commercial business. As a practical matter, the majority eliminates the statutory cause of action under section 553.84.

C.
The narrowest ground for deciding this case would be to follow Delgado and hold that where, as here, a statute creates a cause of action which is expressly stated to be in addition to other remedies, we will apply the statute as written and will not apply the economic loss doctrine.
More broadly, however, the Rubio panel was right: the economic loss doctrine does not apply to statutory causes of action at all. See 662 So.2d at 957 n. 2. The economic loss doctrine is simply a judge-made rule which is designed to sort out when a plaintiff may make a common-law contract claim and when a plaintiff may make a common-law tort claim. Since common-law contract claims and common-law tort claims are themselves judge-made causes of action, it is permissible for the judiciary to adopt the economic loss doctrine as a judge-made rule for deciding which claims can be brought in contract and which claims in tort.
The reason for adopting the economic loss doctrine had nothing to do with the interpretation of statutes. Once the Legislature creates a statutory cause of action, we are obliged to respect the legislative will. As Rubio said, the economic loss doctrine is not a weapon for nullifying statutory causes of action. See id.[14]

*1268 D.
Finally, assuming arguendo that the economic loss doctrine applies to statutory causes of action, the majority has misapplied its own rule. The obligation to obey the building code arises from statute, and is an obligation which arises independent of the contract.

III.
To sum up:
1. Where a landlord through its own negligence damages a tenant's personal property within the leased premises, and where the exculpatory clause in the lease does not exculpate the landlord for its own negligence, the tenant has a cause of action in tort. Since the tenant is suing for property damage, the economic loss doctrine does not apply.
2. The economic loss doctrine cannot be invoked to bar a statutory cause of action.[15] That is particularly so where, as in this case, the statute expressly declares that the statutory cause of action will exist "[n]otwithstanding any other remedies available," § 553.84, Fla. Stat., and consequently will exist even though the plaintiff also has a breach of contract remedy. The plaintiff's claim under section 553.84 is not barred by the economic loss doctrine. Assuming arguendo the majority is correct, it misapplies its own rule in this case.
For the stated reasons, the summary final judgment should be reversed.
NOTES
[1] Comptech's third amended complaint contained a count asserting that Milam failed to comply with the South Florida Building Code by failing to hire licensed contractors and failing to obtain required permits and inspections. Section 553.84, Florida Statutes (1989), provides that "any person or party ... damaged as a result of a violation of this part or the State Minimum Building Codes, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation." The building code standards require certain permits to be obtained prior to constructing or altering a building. § 553.79(1), Fla. Stat. (1989).
[2] The dissent attempts to blur this distinction by reasoning that the ELR can never apply to a statutory action since all statutory enactments are independent. Dissent at 1268. This analysis serves only to obscure the issues with which we are actually confronted. Simply because the cause of action arises out of a statute does not make it an "independent" obligation. Instead, the independence comes from the fact that the claims could not be asserted in a breach of contract action. For instance, in Rubio v. State Farm Fire & Casualty Co., 662 So.2d 956 (Fla. 3d DCA 1995), we allowed a statutory claim against an insurer, despite the ELR, where the statutory cause of action provided for a recovery to the insured not contemplated by contract. The statute in Rubio extended to insureds a cause of action for bad faith by an insurer in covering the insureds' own claims. Prior to the statute's enactment, there was no common law cause of action for bad faith involving an insured's own claim, only when the claim involved a third party. See Rubio, 662 So.2d at 957. As there was no contractual or common law basis on which the insured could sue, the statute created a duty completely independent of what was conceived in the contract and thus the ELR was not triggered. In contrast to the dissent's construction, the ELR does not swallow up any statutory cause of action which creates a duty independent of contractual obligations. See Stallings v. Kennedy Electric, Inc., 710 So.2d 195, No. 97-1412 (Fla. 5th DCA 1998)(independent Section 553.84 cause of action not barred by ELR; there was no contract between the homebuyer and the subcontractor related to any Section 553.84 duty).
[3] The dissent inaccurately contends that "The practical effect of the majority's ruling is to eliminate the statutory cause of action." Dissenting opinion at 1267. This is incorrect. The statute continues to provide a remedy in noncontractual settings for those injured as a result of building code violations. See supra note 2; Stallings v. Kennedy Electric, Inc., No. 97-1412, 710 So.2d 195 (Fla. 5th DCA 1998). While most cases in Florida citing to Section 553.84 either ignore or dismiss the statutory cause of action, those that do acknowledge a cause of action under the statute consistently involve actions independent of a contract between the litigants. See Stallings v. Kennedy Electric, Inc., No. 97-1412, 710 So.2d 195 (Fla. 5th DCA 1998)(independent Section 553.84 cause of action not barred by ELR; there was no contract between the homebuyer and the subcontractor related to any Section 553.84 duty); Edward J. Seibert v. Bayport Beach and Tennis Club Ass'n, Inc., 573 So.2d 889 (Fla. 2d DCA 1990), review denied, 583 So.2d 1034 (Fla.1991)(architect held potentially liable to condominium association where architect's alleged negligent design preceded condominium owners' control of the association); Sierra v. Allied Stores Corp., 538 So.2d 943 (Fla. 3d DCA 1989) (restaurant patron had cause of action against restaurant and mall for injuries sustained from improperly vented exhaust pipe).
[4] We note further that under the circumstances of this case, we are not confronted with a statutory manifestation of a legislative policy decision to expand remedies for recovering economic losses. Cf. Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602 (Fla. 2d DCA 1997)(economic loss rule not a bar to consumers' contract-based claims brought under the Florida Deceptive and Unfair Trade Practices Act because of underlying legislative policy "that the consuming public is entitled to expanded remedies for recovering economic losses suffered as a consequence of deceptive and unfair trade practices and acts.")
[5] We have not overlooked that each of the four dismissed counts, including the building code count, presented an entirely new claim, the litigation had been ongoing for two years, and trial of the case had already commenced when the court allowed Comptech to amend its second amended complaint, allegedly to conform to certain evidence which had been improperly presented at trial. Comptech did not allege any control duty by Milam over its independent contractors and the construction agreement between the contractors and Milam did not implicate any such duty. Without expressing any opinion on this issue, we note that:

Although the South Florida building code provides that compliance is the responsibility of the owner, the code does not impose a duty on a landowner to supervise construction undertaken by an independent contractor. Brown v. South Broward Hosp. Dist., 402 So.2d 58 (Fla. 4th DCA 1981). See also City of Miami v. Perez, 509 So.2d 343 (Fla. 3d DCA 1987), rev. den., 519 So.2d 987 (Fla.1987); Skow v. Department of Transp., 468 So.2d 422 (Fla. 1st DCA 1985) (no explicit duty on a property owner to monitor, inspect or correct safety violations by an independent contractor); Van Ness v. Independent Constr. Co., 392 So.2d 1017 (Fla. 5th DCA), rev. denied, 402 So.2d 614 (Fla.1981) (owner has no common-law duty to supervise independent contractor's work). Liability, under the code, and in accordance with common-law principles, is imposed on "the person or party who committed the violation." § 553.84, Fla. Stat. (1987).
Sierra v. Allied Stores Corp., 538 So.2d 943, 944 (Fla. 3d DCA 1989).
[6] The dissent argues, and we agree, that an indemnity clause which indemnifies against the indemnitee's own negligence must express such intent in clear and unequivocal terms. See Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla.1979). However, this principle is only applicable where the damages are occasioned solely by the indemnitee's own negligence. See Transport International Pool, Inc. v. Pat Salmon & Sons of Florida Inc., 609 So.2d 658 (Fla. 4th DCA 1992).

Here, the alleged damage was caused by the contractor's substandard construction in failing to prevent excessive dust and dirt from being absorbed by the air conditioning system and by interrupting and overloading the electrical system. Comptech has failed to allege any conduct separate and apart from the contractual obligations owed to Comptech by Milam which could constitute direct negligence supporting an independent tort. Thus the foregoing principle asserted by the dissent is inapplicable to invalidate the indemnity provision. See Transport International, 609 So.2d at 660.
Moreover, while our disposition of this case rests on the application of the ELR, we cannot help but reflect that the contractual language used in the indemnification agreement sufficiently manifests the parties clear and unequivocal intent to indemnify Milam for any of its own acts of negligence. See Joseph L. Rozier Machinery Co. v. Nilo Barge Line, Inc., 318 So.2d 557 (Fla. 2d DCA 1975), cert. denied, 328 So.2d 843 (Fla. 1976).
The problem in Charles Poe was that the contract language provided the lessee would assume responsibility "for claims asserted by any person whatever." Charles Poe, 374 So.2d at 489. This language did not specifically express an intent to indemnify the lessor for the lessor's own active negligence.
By contrast, the indemnification agreement entered into by Comptech specifically indemnified Milam from all claims resulting from any negligence: "Lessor shall not be responsible or liable at any time for any defects, latent or otherwise, in any building improvements in the Demised Premises or any of the equipment, machinery, utilities, appliances or apparatus therein ... resulting from any defect or negligence in the occupancy, construction, operation or use of any building or improvements in the Demised Premises, or any of the equipment, fixtures, machinery, appliances of apparatus therein." (Emphasis added.) We think this language clearly expresses the parties intent that Milam be held harmless for any acts of its own negligence. See Winn Dixie Stores, Inc. v. D & J Constr. Co., 633 So.2d 65 (Fla. 4th DCA 1994); Etiole Int'l N.V. v. Miami Elevator Co., Inc., 573 So.2d 921 (Fla. 3d DCA 1990); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972).
Regardless of the validity of the indemnification clause, its relevance for purposes of our analysis is that it reflects Comptech agreed to negotiate rights regarding the risk of the alleged property damage. The indemnification clause thus supports the conclusion that the alleged damages do not constitute a tort separate and apart from the breach of contract.
[7] Instead, realizing after-the-fact the ramifications of its ineffectual bargaining skills, Comptech filed suit seeking damages not only for the actual value of the computers, but for all business that was lost as a result of the computer damage, including punitive damages, for a total in excess of $7,000,000.00. To allow tort recovery under these circumstances is absurd. A landlord should not be responsible for the entire business losses of its commercial tenant where both parties had the ability to freely allocate the risks of potential mishap.
[8] This is not to say that circumstances could never arise under which there is a claim in tort for damage to a tenants property, but only that such circumstances are not present in this case. In fact, we agree with the dissent that there are circumstances where "a landlord-caused injury to a tenant's property within the leased premises qualifies as property damage for purposes of the economic loss doctrine." Dissenting opinion at 1264.

But the dissent misses the point that in order to qualify as "other property," the damaged items must not have been within the contemplation of the parties' bargain. In other words, no "other property" can be damaged, where the property at issue was the subject of the contract. That is precisely the case here.
The agreement to build the addition was for the purpose of developing Comptech's computer business. Comptech was in the business of providing computer hardware distribution which involved testing computer components and peripheral equipment. The purpose for entering into the construction agreement and lease was to accommodate Comptech's plans for expanded sales growth. Obviously the computer business was the object of the parties commercial lease bargain.
[9] The dissent improperly relies on the recent United States Supreme Court decision of Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997), to support the proposition that the tenant may proceed in tort.

The facts in Saratoga involved a defective product in the context of resale to a subsequent user. The Supreme Court quite logically held that equipment added to a product after it has been sold to a subsequent user is not part of the original product itself and therefore constitutes "other property." Saratoga, 520 U.S. at ___, 117 S.Ct. at 1789.
Although recognizing an exception to the ELR, the Court stressed the limited applicability of its ruling and the importance of the economic loss doctrine in continuing to limit the potential for imposing too great a tort liability upon manufacturers and distributors. Noting that the decision narrowly applied the exception to equipment added to a product after resale to a subsequent purchaser, the Court emphasized: "Our holding merely maintains liability, for equipment added after the initial sale, despite the presence of a resale by the Initial User." Saratoga, 520 U.S. at ___, 117 S.Ct. at 1788.
In essence, the Court's ruling simply extended the benefit-of-the-bargain analysis to subsequent purchasers by allowing them to inherit the initial user's claims. Because the added materials to the boat in Saratoga were not part of the bargained-for original agreement between the manufacturer and the initial user, they clearly fell under the "other property" exception to the ELR.
The facts in the present case are clearly distinguishable. Comptech concerns a bargained-for lease agreement; not a product sold to subsequent users after equipment was added. The computers were not added to a product, but were part and parcel of the parties' contemplated agreement at all times. Moreover, risk to the computers was specifically contemplated by the parties as evidenced by the terms of the build-out agreement and the explicit indemnification provision covering potential liability. We are confident that the preceding analysis and a common sense reading of Saratoga mandate this opinion.
[10] By having the freedom to contract, parties can plan and predict their potentials for loss at the beginning of the business relationship. Commercial entities are especially capable of protecting themselves through negotiation or insurance, or they may choose to assume the risk. Even where a commercial loss does trigger the "other property" exception, damages must be limited to the actual value of the damaged property to protect society's interest in the performance of promises. Otherwise, "the ground's gonna swallow" the process of negotiation and the fulfillment of contracts, resulting in adverse economic and societal consequences. Everything But The Girl, Wrong, on Walking Wounded (Atlantic Recording Corporation 1996).
[11] For present purposes, the tenant's version of the facts must be accepted as true since this is an appeal from the granting of summary judgment for landlord.
[12] In a footnote, the majority opinion says that tenant "did not allege any control duty by [landlord] over its independent contractors and the construction agreement between the contractors and [landlord] did not implicate any such duty." Majority opinion at 1259 n. 5.

The tenant's claim in this case is that the landlord was negligent in (1) hiring an unlicensed, and the injury the tenant sustained. Unqualified construction company, (2) failing to prepare architectural plans, and (3) failing to obtain required permits. These are claims that the landlord itself was negligent.
Since tenant alleges direct negligence on the part of the landlord, it is not necessary at this time to consider the existence or extent of the landlord's liability for the acts of the unlicensed contractor.
[13] It may be that the tenant will be unable to establish a causal nexus between the statutory violation and the injury the tenant sustained. See Saratoga Fishing, 520 U.S. at ___, 117 S.Ct. at 1788 (stating that other tort principles, including foreseeability and proximate cause, limit tort liability in important ways). The only issue before us at this time is whether the statutory cause of action is defeated by the economic loss doctrine.
[14] Contributing to the confusion in this area of the law, cases can be found which have applied the economic loss doctrine to bar recovery under the statutory cause of action for civil theft, section 772.11, Florida Statutes. See Sarkis v. Pafford Oil Co., 697 So.2d 524 (Fla. 1st DCA 1997); see also Hoseline, Inc. v. U.S.A. Diversified Prods., Inc., 40 F.3d 1198 (11th Cir.1994).

These cases rest on faulty assumptions. The economic loss doctrine does not apply to civil theft claims because the statute precludes it:
772.18 Cumulative remedy.The application of one civil remedy under this chapter does not preclude the application of any other remedy, civil or criminal, under this chapter or any other provision of law. Civil remedies under this act are supplemental, and not mutually exclusive.
(Emphasis added). By legislative declaration, the statutory causes of action for civil theft (and, for that matter, section 772.104, Florida Statutes, the cause of action for racketeering) are in addition to any other remediesand therefore are in addition to any remedy which might exist for breach of contract.
There is, to be sure, a line of cases holding that a simple failure to pay money owed under a contract does not constitute civil theft. The line of cases originates with this court's decision in Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA 1986), and rests on the idea that a civil theft occurs only if there has been an outright taking of property. See id. at 625-26. A simple failure to pay money owed is neither a taking nor a theft. See id. By contrast, an escrow agent's theft of escrow funds is both a breach of the escrow contract and a civil theft because there has been a taking. See id.; Masvidal v. Ochoa, 505 So.2d 555, 556 (Fla. 3d DCA 1987).
At bottom, Rosen and its progeny simply define the elements of the relevant causes of action. Rosen was decided in 1986, a year before the Florida Supreme Court announced its adoption of the economic loss doctrine in Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So.2d at 900-02.
The above analysis applies with equal force to the suggestion in Sarkis that the economic loss doctrine has been applied to bar civil racketeering claims. See Sarkis, 697 So.2d at 528.
[15] The Fifth District Court of Appeal so held in Stallings v. Kennedy Electric, Inc., No. 97-1412, 710 So.2d 195 (Fla. 5th DCA 1998), and certified conflict with this panel's previously released opinion to the contrary.