550 So.2d 522 (1989)
STATE of Florida, ex rel. SECOND DISTRICT COURT OF APPEAL, and the Carolina Connection, Inc., Petitioners,
v.
Gerald LEWIS, As Comptroller of the State of Florida, Respondent.
No. 89-2368.
District Court of Appeal of Florida, First District.
October 16, 1989.
*523 Alan C. Sundberg and Loula M. Fuller, Carlton, Fields, Ward, Emmanuel, Smith and Cutler, P.A., Tallahassee, for petitioners.
William G. Reeves, Gen. Counsel, and Jo Ann Levin, Senior Atty., Office of Comptroller, Tallahassee, for respondent.
MINER, Judge.
Petitioners seek a Writ of Mandamus directing the respondent to issue a warrant in payment of certain furniture ordered by the court for use by a newly appointed judge. Pursuant to Article V, Section 4(b)(3) of the Florida Constitution and Rules 9.030(b)(3) and 9.100, Florida Rules of Appellate Procedure, we have original jurisdiction to issue such a writ as that requested and do so.
During the 1988 regular legislative session, the Florida Legislature increased the number of judges of the Second District Court of Appeal from 10 to 12 and appropriated funds to support these two new judicial positions. See Chapter 88-555, Laws of Florida. Appropriated funds allocated to the District Court of Appeal, including an amount for Operating Capital Outlay (OCO), were duly released by the governor's office by budget amendment. By State Court System budgeting procedures $27,440 of OCO funds were allocated to purchase furniture and fixtures for the two new judges.
On December 7, 1988, the Governor of Florida filled the newly created judicial positions on the Second District Court of Appeal by appointment to take effect on January 3, 1989, or some 27 days thereafter. Prior to entering upon their judicial duties, the new appointees selected furniture for their offices, the total purchase price of *524 which exceeded $5,000. Petitioners maintain, and respondent does not controvert, that the furniture selected is comparable in quality and cost to existing furniture at the court.
Because he found that the short span of time between appointment of the new judges and their investiture date created exigent circumstances, Chief Judge Campbell, pursuant to applicable state court purchasing directives and with the concurrence of the purchasing director of the office of the state court administrator, determined to waive the requirement that invitations to bid on the furniture purchase be published in the Florida Administrative Weekly. He committed his reasons for waiver of this step in the bidding process to a file memorandum, but did not furnish this memorandum to the Comptroller because no such documentation was requested in the pre-litigation correspondence between the parties.[1]
The Marshal of the Second District Court of Appeal, as court purchasing officer, published an invitation to bid in a local newspaper. Only three bids were submitted and of those three bidders, only one had access to the specific items requested. As provided by Section 3.06(c), of the State Court System Purchasing Directives, the chief judge approved the single bid as did the purchasing director of the state court administrator's office. The bid for the furniture in question was awarded to Carolina Connection, Inc., and a purchase order was issued.
The furniture was sent in two separate shipments to the court. The first shipment was delivered and inspected. The court presented the purchase order, batch sheet, invoice and voucher to the Comptroller who timely mailed a warrant and check to cover the request for payment for the first furniture shipment. When the second shipment was delivered, the court again presented the purchase order, batch sheet, invoice and voucher to the Comptroller. Rather than issue the second warrant, the Comptroller rejected the voucher. Although the first and second vouchers were for similar items, the Comptroller requested additional justification for the furniture purchase contained in the second shipment. Additional information was provided but the Comptroller again rejected the request for payment stating that items functionally similar to those invoiced could be obtained from a state contract, that the purchase was not reasonable or necessary and that Rule 3A-40.103, Florida Administrative Code, precluded the use of state money for "decorative items."
The court requested payment a third time. In rejecting this request, the Comptroller stated that no showing had been made that the use of the state contract would be "detrimental to the efficient or timely operation of the court... ." The Marshal re-submitted the voucher along with documentation to justify the acquisition showing that the furniture purchased was superior in quality to that offered under state contracts and that the purchasing procedures used were in compliance with the purchasing directives of the state court system. To date, the Comptroller has failed to issue a warrant to cover the purchase of the second shipment of furniture.
Petitioners assert that the basis of this action is the constitutional balance between the judicial and executive branches of government regarding their respective powers over the expenditure of duly appropriated state monies. They challenge the authority of the Comptroller to refuse to issue a warrant for payment of an expenditure for which a lawful appropriation was made and the expenditure, as approved by the appropriate officer, violates no provision of law. They find no authority, constitutional, statutory or otherwise, bestowing discretionary power on the Comptroller to reject, evaluate or veto payment of a legal and duly authorized request for payment for which funds have been appropriated. In support of this proposition, they direct *525 our attention to this court's holdings in Florida Dev. Comm'n. v. Dickinson, 229 So.2d 6 (Fla. 1st DCA 1969), cert. denied, 237 So.2d 530 (Fla. 1970) and Florida Export Tobacco Co. v. Department of Revenue, 510 So.2d 936 (Fla. 1st DCA 1987), cert. denied, 519 So.2d 986 (Fla.).
In Dickinson, the court identified the scope and powers of the Comptroller, stating "it is well settled that [the Comptroller] is not empowered to invoke any supervisory authority to veto or disallow expenditures for which lawful appropriation has been made by the legislature." Dickinson, 229 So.2d at 7. In Florida Export Tobacco Co., this court revisited the duties and powers of the comptroller's office as such relate to the payment of accounts against the state and likened the Comptroller's role
to that of an accounting auditor charged with determining, in accordance with generally accepted auditing procedures, that the claim presented is correct in form and amount and is consistent with the substantive power of the agency ordering payment. We decline to construe [the] statutory provision to implicitly include the power to adjudicate the merits of the underlying claim... .
Florida Export Tobacco Co., 510 So.2d at 944.
Petitioners argue that, notwithstanding the holdings in Dickinson and Florida Export Tobacco Co. the Comptroller, in rejecting repeated requests for payment of the subject invoice, is, in substance, adjudicating the merits of the underlying claim and erroneously substituting his subjective judgment for that of Chief Judge Campbell. The reasons he gives for rejecting payment, say petitioners, amount to nothing more than an attempt to supervise, veto and control the official discretion of those in the state court system charged with the responsibility of authorizing appropriated funds to be expended for judicial purposes.
The Comptroller has filed a response and a motion to quash or dismiss, both of which argue essentially the same points. He asserts that, on its face, the petition clearly demonstrates that petitioners have failed to comply with the provisions which govern the purchasing question; that petitioners have failed to avail themselves of a clear legal right, i.e. a Chapter 86 suit for declaratory relief in circuit court, and that issuance of the writ requested will result in chaos and confusion and produce injury to the public.
Specifically, with respect to his first argument, the Comptroller asserts that petitioners have failed to allege compliance with the laws governing acquisition of the furniture in question in the following respects: that petitioners have failed to allege advertisement for bids on the furniture purchase as required; that petitioners failed to allege or demonstrate a bona fide emergency which would relieve the court of the advertisement requirement in the Florida Administrative Weekly; and that among the provisions of the state court system purchasing directives with which the court did not comply are Sections 2.01(a), 3.02, 3.303(b), 3.05 and 3.06(a), (b) and (c).
Respondent next argues that this case involves factual disputes that require the type of extensive fact finding in which this court is not equipped to engage. For this reason, he expresses the view that mandamus will not lie and further that petitioners' remedy is to be found in circuit court in a suit for declaratory judgment.
Lastly, though acknowledging that this court has jurisdiction to grant the relief sought, respondent maintains that should the writ prayed for issue, "other state officers and employees will certainly use this unfortunate precedent as an excuse for failing to follow the State's elaborate procurement process." This, he says, will result in an "explosion" of applications for extraordinary writs like the one sought here.
Turning first to respondent's motion to quash or dismiss this proceeding in this court, we do not share his view that the resolution of this case requires extensive fact finding. We believe the issue presented to be a basic, simple and straightforward question of law  did the Second District Court of Appeal have the power to *526 incur the expenditure that is the subject of this litigation? If that question is answered in the affirmative, the fact that the Comptroller "feels" that the cost of the items purchased is excessive, unreasonable and unnecessary or that "functionally similar" items of furniture were available under a state contract or that "adequate justification" for the purchase was not forthcoming or that no "bona fide" emergency existed to justify waiver by Judge Campbell of the bid publication requirement in the Florida Administrative Weekly is irrelevant to the inquiry.
The state court system purchasing directives to which the Comptroller alludes were not imposed from without but were developed within the state court system as guidelines to advise the judgment and discretion of those within the judicial branch of government whose responsibilities include procurement of goods and services deemed necessary to permit the carrying out of the judicial function. With respect to expenditures of appropriated monies, the Comptroller is not in the chain of approval or disapproval in the judicial procurement process as long as such expenditures remain within the boundaries staked out in the legislative appropriation.
It is too basic to require further explication that the judicial branch of government in our constitutional scheme of things is not a state agency and is no more or no less equal than the executive and legislative branches. As do the other two branches, it derives its power from the people. The power to do a thing necessarily carries with it the discretion as to how that power will be exercised. Were it otherwise, power would be only an illusory and meaningless concept. Power and discretion are not unbridled or unlimited. Indeed, they are limited by the grant of power itself. For example, courts cannot willy nilly strike down legislative enactments or acts of executive officers because they do not comport with judicial notions of what is right or politic or advisable. The power to review is both inherent in and limited by the constitutional document itself. So long as the legislative and executive branches of government do not exceed their grant of power from the people, courts are powerless to limit their discretionary determination as to how, if, when or in what manner they will act.
The foregoing should not be interpreted to imply that the Comptroller has no role in the review of judicial expenditures. He does. For instance, if a component part of the judicial branch of government contracts for the expenditure of public funds for a purpose not contemplated in a legislative appropriation or in furtherance of the judicial function, the Comptroller would be duty bound to refuse to issue a payment warrant. This would be so because that judicial component did not have the power or discretion to incur the expenditure.
In this case, though he does not question the power of the Second District Court of Appeal to make the approved purchase in question, the Comptroller claims the power to review the exercise of discretion of responsible judicial branch officers as to how that purchase was effected. He has not been granted such power. Just as the courts may not poach in his power patch neither may he do so in theirs.
Accordingly, we deny respondent's motion to quash or dismiss and issue the writ requested. The respondent is directed to forthwith issue a warrant in payment of the invoice submitted for the furniture in question. Additionally, pursuant to Section 215.422(3)(b), Florida Statutes, to the invoice amount the Comptroller shall add an amount equal to one per cent (1%) per month on the unpaid balance.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] Indeed, it was only after this litigation was commenced that Judge Campbell was apprised in respondent's response to the petition that one of his reasons for rejecting payment of the subject invoice was the judge's failure to provide his reasons for waiving compliance with the Florida Administrative Weekly publication provision on the Comptroller's prescribed form.