735 So.2d 499 (1999)
Paul V. FACCHINA, Jr., Appellant,
v.
MUTUAL BENEFITS CORP., a Florida Corporation; Viatical Benefits Foundation, Inc., a Florida corporation; Florida's Hotspots Publishing, Inc., a Florida corporation; Scoop Magazine, Inc., a Florida corporation; Strubco, Inc., a New York corporation; Poz Publishing Inc., a New York corporation; and Bert Jaeger, Appellees.
No. 97-2580.
District Court of Appeal of Florida, Fourth District.
January 20, 1999.
J. Davis Connor of Peterson & Myers, P.A., Winter Haven, for appellant.
*500 Michael J. McNerney, Stephen L. Ziegler and Jonathan M. Streisfeld of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, of Fort Lauderdale, for appellees Mutual Benefits Corp. and Viatical Benefits Corp.
Norman Elliott Kent of Law Offices of Norman Elliott Kent, P.A., Fort Lauderdale, for appellees Florida Hot Spots! Publishing Inc. and Scoop Magazine Inc.

CORRECTED OPINION
FARMER, J.
This case requires us to consider the Byzantine applications of the economic loss rule (ELR) in a case involving the publication of photographs of the plaintiff in such a manner as to suggest that he is dying of AIDS. The trial court found that his claims involving unauthorized publication, invasion of privacy and defamation are barred by ELR. We reverse.
Because this case was dismissed for failure to state a cause of action, we are required to accept the allegations of the complaint as true at this stage of the proceedings. Warren v. Dairyland Ins. Co., 662 So.2d 1387, 1388 (Fla. 4th DCA 1995) ("We are bound to consider the four corners of the complaint, together with the exhibits, and accept all well-pleaded allegations as true."); Aaron v. Allstate Ins. Co., 559 So.2d 275, 276 (Fla. 4th DCA 1990) ("It is axiomatic that in reviewing an order dismissing a complaint for failure to state a cause of action the appellate court's scope of review is relatively narrow. The court merely looks to the four corners of the complaint to determine whether it states a cause of action. The court takes all well pleaded allegations therein as true."); Sovran Bank, N.A. v. Parsons, 547 So.2d 1044 (Fla. 4th DCA 1989); Royal Palm Beach Colony, Inc. v. Greenway Village South Ass'ns No. 1, 2, 3, and 4, Inc., 443 So.2d 1034 (Fla. 4th DCA 1983); City of Hallandale v. Gulfstream Park Racing Ass'n Inc., 440 So.2d 1328 (Fla. 4th DCA 1983); Nat'l Financing Corp. v. Weiche, 371 So.2d 707 (Fla. 4th DCA 1979); and Wenner v. Foster, 336 So.2d 1248 (Fla. 4th DCA 1976). Consequently, the following statement of factual background is taken solely from plaintiff's complaint as amended. We have no way of knowing at this stage whether plaintiff will be able to prove these allegations, and we certainly do not present them as established fact or imply any agreement with them. Rather we necessarily indulge the assumption that the contentions are true for the limited purpose of assessing whether he has sufficiently pleaded a case as to which he is entitled to offer evidence.
He begins by alleging that Viatical Benefits Foundation (VBF) purchases life insurance policies on discount from terminally ill patients primarily in the homosexual community. Mutual Benefits Corporation (MBC), he says, is an affiliate that matches persons interested in purchasing death benefits of qualified life insurance policies from individuals desiring to sell these benefits for their current, reduced cash value. To that end, these companies advertise in various media. Florida's Hotspots Publishing (Hotspots) and Scoop Magazine (Scoop) are publishers of periodicals which he claims are directed to sexually active homosexuals.
Plaintiff is a male model and is paid for the use and publication of his image and likeness. In November 1994, he claims that he and MBC entered into a written agreement for the use of his image in photographs for specified advertising purposes. The agreement allegedly states:
"For valuable consideration received I, Paul V. Facchina, hereby release to [MBC] the use of my photograph, herewith attached, for advertisement purposes without further consideration. Said advertisement shall be limited to the sole purpose of purchasing life insurance policies and its related interests."
More than a year later, he filed a lawsuit against MBC and the other defendants for unauthorized use of his photographs. Essentially, he alleged that the defendants *501 published his image in periodicals across the country directed to sexually active homosexuals and that the text of the advertisements and the placement of his picture therein implied that he is a homosexual with the terminal illness known as AIDS.[1] The effect, he said, was to portray him in a prominent advertising campaign as a "poster boy" for homosexuals dying from AIDS.
Count I alleged a claim for unauthorized publication of his photographs; Count II sought injunctive relief against further use of the photographs; Count III asserted an action for invasion of privacy, alleging that the defendants falsely portrayed him as homosexual male with AIDS; Count IV asserted an action for defamation, alleging that the defendants depicted him as homosexual male with AIDS; and Count V alleged fraud, claiming that the defendants misrepresented the purposes for which his photographs would be used. The trial court initially granted the dismissal of Counts I, III, and IV on the grounds of the economic loss rule (ELR); and Counts II and V on the grounds that they failed to allege sufficient facts to set forth a cause of action.
He then filed an amended complaint which essentially added that his damages included "physical injury resulting from severe emotional distress, including treatable gastrointestinal problems and treatable dental damages due to nocturnal teeth grinding." The trial court again granted a motion to dismiss the pleading on the same grounds as the original complaint. He soon filed a second amended complaint, but made no substantial changes to the factual allegations previously made. The second amended complaint asserted an additional cause of action, count VI, claiming that an employee of VBF falsely notarized his signature and fabricated a release of his photographs.[2]
Defendants moved to dismiss the second amended complaint with prejudice, arguing that the plaintiff's claimed damages for loss of business and loss of profits barred his various damage claims for defamation, invasion of privacy and unauthorized publication. Agreeing with that contention, the trial court dismissed Counts I (unauthorized publication), III (invasion of privacy) and IV (defamation) with prejudice on the grounds of the ELR. Plaintiff voluntarily dismissed the remainder of the counts in his complaint against all defendants and now timely appeals the judgment of dismissal. We are thus concerned on appeal with the application of the ELR only as against claims for unauthorized publication, invasion of privacy, and defamation.
Plaintiff bases his claim for unauthorized publication on section 540.08 which provides in pertinent part as follows:
"(1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by [such person]....
(2) In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used ... may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages....

*502 (6) The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy."[3]
Plaintiff argues that the legislature intended the statutory words "any loss or injury" to include both economic damages and non-economic damages. Moreover, he points out that this is a statutory cause of action, not one based on the common law, and that the text chosen by the legislature controls the rights and liabilities of the parties to such a cause of action.
ELR is a judge-made limitation on common law tort remedies that bars recovery for purely economic losses. Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993) (ELR prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself). As the court explained in Casa Clara:
"[ELR] is `the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.'"
620 So.2d at 1246. The court defined economic losses as "`disappointed economic expectations,' which are protected by contract law, rather than tort law." Id.
Plaintiff's claim for unauthorized use is based not on tort or contract law but on a statutory right. When the legislature creates a statutory cause of action, as it has expressly done in section 540.08, it is presumed to know the common law of contract and tort and the limitations on such remedies created by judges. ELR is one of those judicial limitations on the common law remedies in tort and contract. In crafting new statutory causes of action, the legislature is master of the elements and boundaries on the new cause of action. Hence, the legislature's use of unqualified terms"any person" and "any loss or injury" in the text of such a statute evidences to us its intent not to apply judicial limits on common law remedies to the new statutory cause of action. Therefore we agree with plaintiff that ELR does not bar his cause of action under section 540.08 for unauthorized use of his likeness in ads directed to homosexuals with AIDS.[4]
Turning next to plaintiff's common law tort claims of defamation and invasion of privacy, we note that in HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d 1238 (Fla.1996), the court made clear that:
"[ELR] has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."
685 So.2d at 1239. In HTP, a claim for fraud in the inducement was not barred by ELR. In Casa Clara a homeowner's claim against a subcontractor, whose negligence in supplying concrete in the construction of the home led to a damaged structure, was barred by ELR.
In light of the special purposes underlying ELR, we have little trouble in concluding that plaintiff's defamation cause of action is not barred by ELR. By contracting with defendant to allow the use of his likeness in specified advertising, plaintiff could hardly have foreseen the need to *503 provide for remedies for a later defamatory falsehood concerning him. It would be unrealistic to hold potential defamation claimants to a duty to provide for remedies by contract with potential defamers, assuming they could be foreseen. Moreover, as plaintiff points out, the tort of defamation under Florida law protects economic interests as well as humiliation and embarrassment. See Rety v. Green, 546 So.2d 410, 423 (Fla. 3d DCA 1989), rev. denied sub nom. Southern Commodity Corp. v. Rety, 553 So.2d 1166 (Fla.1989) (victim may recover consequential business damages for defamatory falsehood prejudicing him in trade or business; no error in admitting evidence of drop-off of sales in business). Thus even if the nature of the damages suffered from a defamatory falsehood is economic, ELR has no application to the defamation claim.
As to the invasion of privacy claim, we put aside for the moment whether the contract itself bars any relief under this cause of action and proceed to consider whether, apart from other defenses, the claim is nevertheless barred by ELR. In Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944), the court held that "there is a right of privacy, distinct in and of itself and not merely incidental to some other recognized right, and for breach of which an action for damages will lie." 20 So.2d at 250. Later in Jacova v. Southern Radio & Television Co., 83 So.2d 34 (Fla. 1955), the court quoted with implicit approval the following explanation of the cause of action for invasion of privacy:
"[a]n invasion of the right of privacy occurs not with the mere publication of a photograph, but occurs when a photograph is published where the publisher should have known that its publication would offend the sensibilities of a normal person, and whether there has been such an offensive invasion of privacy is to some extent a question of law."
83 So.2d at 39. Thus the mere right to publish a photograph, as has been granted by this contract, would not necessarily immunize the publisher of the photograph from damages for invasion of privacy. If a generally authorized publication were made in such a manner that the publisher should reasonably have known would offend the sensibilities of a normal person, then as a preliminary legal matter the claim would state a cause of action.
The question in this case is whether the contract allowing publication makes this particular claim subject to ELR. Applying the rationale of Casa Clara, one might fairly suggest that plaintiff could have provided in specific terms with his contracting party the circumstances and specific media in which publication could be had. As our quotation from Jacova suggests, the special nature of the action for invasion of privacy is not limited necessarily to the right to publish but also includes the circumstances and manner of publication. Hence one who agrees to allow publication of his likeness could fairly anticipate at least some foreseeable questions or problems in regard to the manner and circumstances of publication.
Yet a person may have a contractual right to publish the likeness of another without breaching a contract giving him the right to publish but may still abuse that right and publish in such a manner as to violate the subject's personal, privacy interests. We question whether it is realistic or even possible, moreover, to cover by appropriate contractual language all the possible circumstances under which a publication, though otherwise generally authorized, may nevertheless offend some undiscussed or unreferenced privacy interest. Under the unique circumstances of this case, we think that it is not realistic to anticipate that an authorized publication for advertising purposes may be used as it was here. Therefore we hold that ELR *504 does not alone bar the claim.[5]
We reverse for further proceedings.
STONE, C.J., and GROSS, J., concur.
NOTES
[1] Acquired Immune Deficiency Syndrome is highly contagious under certain conditions and almost always fatalat least in the current state of medicine.
[2] Generally, the second amended complaint sought the same damages as the previous complaints, consisting of humiliation, loss of reputation, severe emotional distress, and loss of opportunities and profits in his modeling career, as well as physical injuries resulting from severe emotional distress.
[3] See § 540.08, Fla. Stat. (1997). There are exceptions in the statute for publications in the news media, and for artistic or literary purposes, and for depiction as part of the general public without identification.
[4] In so ruling, we limit our decision to the ELR issue only and do not address the legal sufficiency of the pleading, the nature of any defenses thereto, or the proof needed to sustain it.
[5] Again, we stress that we express no holding on other defenses, such as the effect of the contract itself on any damages claim for an invasion of privacy. Instead we view these as affirmative defenses subject to pleading and proof and not determinable under a mere motion to dismiss for failure to state a cause of action.