753 So.2d 1219 (1999)
COMPTECH INTERNATIONAL, INC., etc., Petitioner,
v.
MILAM COMMERCE PARK, LTD., etc., et al., Respondents.
Kennedy Electric, Inc., Petitioner,
v.
Carl Stallings, Jr., etc., et al., Respondents.
Nos. 93,336, 93,126.
Supreme Court of Florida.
October 28, 1999.
Rehearing Denied January 26, 2000.
*1220 Charles M. Auslander of St. Louis, Guerra & Auslander, P.A., Miami, Florida; Joseph Pardo of Pardo & Pardo, P.A., Miami, Beach, Florida; and Jeffrey J. Pardo, Burlington, Connecticut, for Petitioner in No. 93,336.
David C. Appleby of Womack, Appleby & Brennan, P.A., Miami, Florida, for Respondents in No. 93,336.
Richard A. Solomon of Rumrell, Wagner & Costabel, LLP, Orlando, Florida, for The Florida Concrete & Products Association, Amicus Curiae in No. 93,336.
John Beranek of Ausley & McMullen, Tallahassee, Florida; and Carl B. Schwait and David A. Cornell of Dell Graham, P.A., Gainesville, Florida, for Petitioner in No. 93,126.
Paul M. Meredith and John F. Sproull, Palatak, Florida, for Respondents in No. 93,126.
Barbara Green and Roy D. Wasson, Miami, Florida, for The Academy of Florida Trial Lawyers, Amicus Curiae in No. 93,126.
QUINCE, J.
We have for review Comptech International, Inc. v. Milam Commerce Park, Ltd. 711 So.2d 1255 (Fla. 3d DCA 1998),[1] and Stallings v. Kennedy Electric, *1221 Inc., 710 So.2d 195 (Fla. 5th DCA 1998), which expressly and directly conflict with each other. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the Third District's decision in Comptech because the economic loss rule[2] does not preclude a statutory cause of action under the Southern Building Code, section 553.84, Florida Statutes (1995), and because the computers that were damaged during the renovations of the warehouse meet the definition of "other property" under the exception to the economic loss rule. We approve the Fifth District's decision in Stallings, holding the economic loss rule does not preclude a homeowner's claim against a subcontractor for violation of section 553.84, Florida Statutes (1995).

Comptech International v. Milam Commerce Park
Comptech International, Inc. (Comptech) was leasing warehouse space from Milam Commerce Park, Ltd. (Milam). The lease was renewed with a provision that Milam would renovate the warehouse and create an office for Comptech to use for its ongoing computer business. Comptech had previously used the warehouse to store its computers and was to continue using the warehouse for this purpose both during and after the renovations. The renewal contract contained an indemnity clause stating that Comptech agreed to hold Milam harmless for "all claims of every kind" including "damaged merchandise, equipment, fixture or other property, or damage to business or for business interruption, arising, directly or indirectly out of, from or on account of such occupancy and use, or resulting from present or future condition or state of repair thereof." Comptech, 711 So.2d at 1261. The indemnity clause did not specifically state that Milam would be held harmless for its own negligence. Milam hired a contractor to perform the renovations; however, the renovations were performed negligently, causing damage to the computers located in the warehouse. In addition, the landlord failed to obtain the required building permits for the building addition. Comptech sued Milam for: (1) negligent selection of contractor; (2) negligent construction; (3) violation of section 553.84; and (4) return of illegally collected rent. The Third District held the negligence claims were barred by the economic loss rule, despite the statutory duty created by section 553.84. The court also rejected Comptech's argument that even if the economic loss rule applied, the computers should have been exempted from the rule under the "other property" exception.
We agree with Judge Cope's dissent in Comptech, 711 So.2d at 1263 (Cope, J., dissenting), where he opines that the economic loss rule cannot be used to eliminate a statutory cause of action. Id. This, he says, is particularly true where the statute states that it is applicable "[n]otwithstanding any other remedies." The statute at issue here, section 553.84, provides:
Statutory Civil Action. Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this part or the State Minimum Building Codes, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation.
*1222 This statutory provision provides a cause of action when a person or entity is injured by a defendant who is engaged in construction without obtaining the required building permits or who violates the building code. The statute uses language that makes it unmistakably clear that the remedy provided therein is in addition to any other remedies that may be available.
As Judge Cope points out, the Third District addressed this statutory construction issue in Rubio v. State Farm Fire & Casualty Co., 662 So.2d 956 (Fla. 3d DCA 1995),[3] where the court reached the opposite conclusion from that reached in the instant case. In Rubio, the trial court dismissed a bad faith action brought pursuant to section 624.155, Florida Statutes (1993), because the statutory cause of action arose out of the breach of contract and was therefore barred by the economic loss rule. The district court reversed, finding courts could not "willy nilly" strike down legislative enactments and abrogate the rights granted under statutes and the common law. Rubio, 662 So.2d at 957 & n. 2; see also State ex rel. Second District Court of Appeal v. Lewis, 550 So.2d 522, 526 (Fla. 1st DCA 1989) ("[C]ourts cannot willy nilly strike down legislative enactments or acts of executive officers because they do not comport with judicial notions of what is right or politic or advisable."). It is undisputed that the Legislature has the authority to enact laws creating causes of action. If the courts limit or abrogate such legislative enactments through judicial policies, separation of powers issues are created, and that tension must be resolved in favor of the Legislature's right to act in this area. See Holly v. Auld, 450 So.2d 217 (Fla.1984); City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769 (1914).
Since the decision in Rubio, other district courts have followed the rationale espoused therein and found that the economic loss rule is not a bar to various statutory enactments. For example, in Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602 (Fla. 2d DCA 1997), the Second District addressed the applicability of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[4] in a situation involving a written sales contract. In holding that the judicial policy pronouncement embodied in the economic loss rule has no application to a statutory action brought under the FDUTPA, the court stated:
[C]ourts do not have the right to limit and, in essence, to abrogate, as the trial court did in this case, the expanded remedies granted to consumers under this legislatively created scheme by allowing the judicially favored economic loss rule to override a legislative policy pronouncement and to eliminate the enforcement of those remedies.
Delgado, 693 So.2d at 609.
Similarly, in Stallings v. Kennedy Electric, Inc., 710 So.2d 195 (Fla. 5th DCA 1998), the Fifth District addressed the dismissal of a claim brought under section 553.84, Florida Statutes (1995), based on the economic loss rule. The court opined that the economic loss rule does not apply to statutory causes of action, especially when the statute provides that the remedy exists "notwithstanding any other remedies available." 710 So.2d at 197.
More recently, in Facchina v. Mutual Benefits Corp., 735 So.2d 499 (Fla. 4th DCA 1999), the Fourth District reviewed the same issue in the context of an unauthorized publication action brought pursuant to section 540.08, Florida Statutes (1993).[5] In ruling that the plaintiff's cause *1223 of action under the statute was not barred by the economic loss rule, the court said:
When the legislature creates a statutory cause of action, as it has expressly done in section 540.08, it is presumed to know the common law of contract and tort and the limitations on such remedies created by judges. ELR is one of those judicial limitations on the common law remedies in tort and contract. In crafting new statutory causes of action, the legislature is master of the elements and boundaries on the new cause of action. Hence, the legislature's use of unqualified terms-"any person" and "any loss of injury"-in the text of such a statute evidences to us its intent not to apply judicial limits on common law remedies to the new statutory cause of action. Therefore we agree with plaintiff that ELR does not bar his cause of action under section 540.08 for unauthorized use of his likeness in ads directed to homosexuals with AIDS.
Facchina, 735 So.2d at 502.
Thus, the Second, Fourth, and Fifth District Courts of Appeal have held that statutory causes of action are not limited by the economic loss rule. We agree. Based on our holding that the economic loss rule does not bar statutory causes of action, we quash the decision of the Third District on this issue and remand for further proceedings.
The district court also held the computers that were damaged during the course of the warehouse renovations did not fall into the "other property" exception to the economic loss rule, as that term was explained in Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So.2d 899 (Fla.1987), and Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993). In order to appreciate and understand the use of the term "other property," we must examine the genesis of the economic loss rule.
From a doctrine that has its roots in the products liability arena, see East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); Florida Power & Light, 510 So.2d at 899, the economic loss rule has been expanded to include such diverse areas as the purchase of services, see AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987); the negligent performance of services, see Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412 (Fla. 3d DCA 1995); and the negligent performance of architectural services, see Sandarac Ass'n v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992).
In East River, the Court was concerned with the question of whether the purchaser of steam turbines[6] could sue the manufacturer in negligence or strict liability where a defective component of the turbine caused damage to the turbine but did not cause damage to the rest of the ship. See 476 U.S. at 858, 106 S.Ct. 2295. In holding that the purchaser's cause of action was one for breach of warranty, the Court discussed the policies underlying the application of the economic loss rule to situations where a product damages itself but no "other property." Id. The Court opined:
The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured,[[7]] the "cost of an injury and the *1224 loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. Escola v. Coca Cola Bottling Co., 24 Cal.2d, at 462, 150 P.2d, at 441 (opinion concurring in judgment). In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. See 10A G. Couch, Cyclopedia of Insurance Law §§ 42:385-42:401, 42:414-417 (2d ed.1982); 7 E. Benedict, Admiralty, Form No. 1.16-7, p. 1-239 (7th ed.1985); 5A J. Appleman & J. Appleman, Insurance Law and Practice § 3252 (1970). Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified. Cf. United States v. Carroll Towing Co., 159 F.2d 169, 173 (C.A.2 1947).
Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or in other words, that the customer has received "insufficient product value." The maintenance of product value and quality is precisely the purpose of express and implied warranties. Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract.
East River, 476 U.S. at 871-72, 106 S.Ct. 2295 (citations and footnote omitted). It seems abundantly clear that the Supreme Court was dealing with and concerned about a product that had malfunctioned, injuring itself but causing no injury to persons or other property.
Likewise, this Court in Florida Power, 510 So.2d at 899, addressed a situation involving the purchase of nuclear steam generators. Florida Power and Light (FPL) contracted with Westinghouse to design, manufacture, and furnish two nuclear steam supply systems, which included six steam generators. Leaks were discovered in all six generators and FPL brought suit alleging a breach of express warranties and negligence. The only damages alleged were for injury to the generators themselves. In determining that the economic loss rule precluded recovery in tort for purely economic losses when a product injures itself but causes no other personal or property damage, we relied in part on the language from the Supreme Court in East River, holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." 476 U.S. at 871, 106 S.Ct. 2295. Here again, the economic loss rule was a bar to a tort cause of action where a product was involved, the product damaged only itself, and the losses were purely economic.
Had the courts adhered to these requirements (a product, the product damaging itself, and economic losses), the confusion that has abounded in this area of the law would have been minimized. However, as we recently acknowledged in Moransais v. Heathman, 744 So.2d 973 (Fla. 1999), our pronouncements on the economic loss rule have not always been clear and have been the subject of "criticism and commentary." In Moransais, we said:
Unfortunately, however, our subsequent holdings [subsequent to Florida Power] have appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent. For example, in AFM Corp., we extended the economic loss *1225 rule to preclude a negligence claim arising from breach of a service contract in a nonprofessional services context. In that case, AFM contracted with Southern Bell for a referral service for AFM's customers. However, Southern Bell mistakenly listed the wrong telephone number in its yellow pages and inadvertently disconnected the referral system by giving a different customer AFM's old telephone number. Because AFM's damages resulted from a breach of the underlying contract and not any independent tort, we held that AFM was limited to contractual remedies only. 515 So.2d at 181. In other words, we held that a purchaser of services could not recover purely economic loss due to negligence arising from a breach of contract where the purchaser has not shown the commission of a tort independent of the breach itself. Id. While we continue to believe the outcome of that case is sound we may have been unnecessarily over-expansive in our reliance on the economic loss rule as opposed to fundamental contractual principles.
In Airport Rent-A-Car and Casa Clara,[[8]] we again considered the application of the rule in product liability type cases. In Casa Clara, we held that the economic loss rule barred a cause of action in tort for providing defective concrete where there was no personal injury or damage to property other than to the product itself. 620 So.2d at 1246. Our opinion, however, was not unanimous, especially as to our characterization of "other property." We stated that tort law was designed to protect the interest of society as a whole by imposing a duty of reasonable care to prevent property damage or physical harm to others, whereas contract law operates to protect the economic expectations of the contracting parties when a "product" is the object of the contract. Id. at 1246. We also stated expansively in Casa Clara that "[w]hen only economic harm is involved, the question becomes `whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies.'" Id. at 1247. In Airport Rent-A-Car, we followed the reasoning in Casa Clara in holding the economic loss rule barred a cause of action for negligence against the manufacturer of defective buses where the only damage alleged was to the buses themselves. 660 So.2d at 630-31.
More recently this Court has recognized the danger in an unprincipled extension of the rule, and we have declined to extend the economic loss rule to actions based on fraudulent inducement and negligent misrepresentation. See PK Ventures, Inc. v. Raymond James & Assoc., 690 So.2d 1296 (Fla.1997)(negligent misrepresentation); HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996)(fraudulent inducement). In HTP, Ltd., we held that a claim for fraudulent inducement constituted a tort independent from the underlying contract and, therefore, was not barred by the economic loss rule.... 685 So.2d at 1239; see also Woodson v. Martin, 685 So.2d 1240 (Fla.1996). We relied on this reasoning in PK Ventures, wherein we held that the economic loss rule did not preclude a cause of action by the buyer of commercial property against the seller's broker for negligent misrepresentation. 690 So.2d at 1297. Both HTP, Ltd. and PK Ventures demonstrate our recent determination to limit the application and reach of the economic loss rule.
Moransais, 744 So.2d at 982. In Moransais, we acknowledged that the economic loss rule has some genuine, albeit limited, value in tort and contract law, and we continue to do so. However, the economic loss rule cannot be used as a barrier to *1226 legitimate causes of action whether they be statutory or common law. As we said in Moransais, "the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts." Id. at 983.
With this understanding of the use of the term "other property," we agree that the trial and district courts erred in finding the computers which were damaged during the warehouse renovations were not "other property." This case is not a products liability or similar case. The subject of the contract between the parties was not a product but a service. Thus, this case does not involve "other property," as that term was used in East River and Florida Power. The term is not truly applicable to a situation such as the one before us where the subject of the contract is a service. However, to the extent the warehouse is the object of the contract, the computers in the warehouse are indeed "other property." Therefore, recovery for damages to the computers is not precluded under the economic loss rule.
As Judge Cope pointed out in his dissent in this case, such a reading of the term "other property" is supported by the Supreme Court's recent decision in Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). Comptech, 711 So.2d at 1263 (Cope, J., dissenting). In Saratoga Fishing, the owner of a fishing boat brought a products liability action against the builder and designer of the boat and its hydraulic system, alleging that the system was defectively designed. The boat caught fire and sank, resulting in a loss of equipment, including an extra skiff, nets, and spare parts, which were added to the boat after it was originally purchased. The Court found that the boat itself was the "product" and the equipment added after the manufacturer sold it was "other property." Thus, the Court held the plaintiff could recover for physical damage caused by the defective "product" to the "other property."
Even under a Casa Clara analysis, the computers are "other property" and not subject to the economic loss rule. In Casa Clara, homeowners sought to recover damages in tort against concrete suppliers when the concrete supplied was defective because it contained a high quantity of salt. The salt caused the reinforced steel inserts in the concrete to rust, which in turn caused the concrete walls to crack. In holding that the economic loss rule precluded a claim for negligence and a claim for violation of the building code by the homeowners, this Court found that the homes themselves were not "other property" for purposes of the economic loss rule. We relied in part on the concept of what was purchased by the homeowners. We said:
The homeowners also argue that Toppino's concrete damaged "other" property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished productsdwellingsnot the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.
Casa Clara, 620 So.2d at 1247. The "product" purchased by Comptech was the renovation of the warehouse. The computers placed in the warehouse were not an integral *1227 part of the product and were therefore "other property" under the Casa Clara rationale.[9]Id.; see also 2-J Corp. v. Tice, 126 F.3d 539 (3d Cir.1997) (contents of a prefabricated warehouse considered "other property" within meaning of the economic loss rule.)

Kennedy Electric v. Stallings
In Stallings v. Kennedy Electric, Inc., 710 So.2d 195 (Fla. 5th DCA 1998), the trial court dismissed Stallings' fourth amended complaint, which contained counts for negligence, negligence per se, and statutory damages under section 553.84, Florida Statutes (1995). The suit was brought against Kennedy Electric, the subcontractor who had installed the electrical wiring during the construction of the Stallings' home. The Stallings alleged the wiring was faulty and caused two fires. The trial court dismissed all three causes of action based on the economic loss rule.[10] The Fifth District reversed the dismissal of the count under section 553.84, holding the economic loss rule does not apply to statutory causes of action. We agree and therefore approve the Fifth District's decision.
In reaching its conclusion, the Fifth District relied on Rubio, 662 So.2d at 956, and Delgado, 693 So.2d at 602. In each case, the district court found the economic loss rule could not be used to defeat a statutory cause of action (section 624.155 and section 501.213, respectively), especially where the Legislature has made it clear that the statutory remedy is available notwithstanding the fact that there may be another cause of action.
As we stated above, the Legislature has made it abundantly clear in unambiguous language that the statutory remedy for violation of the building code is available "notwithstanding any other civil remedies available." The judicially created economic loss rule cannot abrogate this statutory cause of action. We therefore approve the Fifth District's determination that a cause of action pursuant to section 553.84 is not precluded by the economic loss rule.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
WELLS, J., concurs with an opinion, in which PARIENTE and LEWIS, JJ., concur.
WELLS, J., concurring.
I concur in the well-reasoned analysis of the majority opinion. I write only to reiterate my view expressed in my concurring opinion in Moransais v. Heathman, 744 So.2d 973 (Fla. 1999), that in order to clarify the application of the economic loss rule, I would expressly state that its application is limited to product claims and would recede from AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla.1987).
PARIENTE and LEWIS, JJ., concur.
NOTES
[1] On September 17, 1997, the Third District issued an opinion which held that the economic loss rule did not permit Comptech, the lessee, to sue Milam, the lessor, for damages under section 553.84, Florida Statutes (1995), and that its tort action for damages for negligent construction did not fall under the "other property" exception to the economic loss rule. After the Fifth District, in Stallings, held the economic loss rule did not preclude a statutory cause of action and certified conflict with Comptech, the Third District issued a revised opinion attempting to explain there was no conflict between the two cases. The revised opinion is before this Court.
[2] "The `economic loss' rule is a court-created doctrine which prohibits the extension of tort recovery for cases in which a product has damaged only itself and there is no personal injury or damage to `other property,' and the losses or damage are economic in nature." Southland Constr., Inc. v. Richeson Corp., 642 So.2d 5, 7 (Fla. 5th DCA 1994).
[3] In Doan v. John Hancock Mutual Life Insurance Co., 727 So.2d 400 (Fla. 3d DCA 1999), the court receded from Rubio, 662 So.2d at 956, on other grounds.
[4] Section 501.213(1), Florida Statutes (1991), provides that "[t]he remedies of this part are in addition to remedies otherwise available for the same conduct under state or local law."
[5] Section 540.08(6), Florida Statutes (1993), provides:

The remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of his privacy.
[6] Steam turbines were the main propulsion units for oil-transporting supertankers.
[7] The Court acknowledged that the same principle applicable to personal injuries is also applicable to injuries to "other property." In so holding the Court cited to Genesee County Patrons Fire Relief Assn. v. L. Sonneborn Sons, Inc., 263 N.Y. 463, 189 N.E. 551, 553-55 (1934); Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392, 399 (1932). See East River, 476 U.S. at 867, 106 S.Ct. 2295.
[8] Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628 (Fla.1995); Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993).
[9] We also reject Milam's argument that Comptech cannot sue in tort for damage to the computers because the indemnity claim contemplates the possibility of damage to the computers. The indemnity provisions purport to indemnify the landlord for damages occasioned by the tenant's actions; there is nothing in the indemnity provisions to exculpate the landlord from his own negligence.
[10] The propriety of the dismissal of the negligence and negligence per se counts are not before this Court.